UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| FALLON FONG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 2:12-CV-386 JD |
| | ) | |
| WELLS FARGO BANK, N.A., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

On September 21, 2012, plaintiff Fallon Fong, proceeding *pro se*, filed a complaint in this

Court against several banking and financial institutions. [DE 1].[1] In her complaint, Fong asserted

claims against all defendants under the federal Real Estate and Settlement Procedures Act

("RESPA"), located at 12 U.S.C. § 2601 *et seq.*, and specifically under 12 U.S.C. § 2607(a)-(b),

which prohibits referral fees and kickbacks and other fees for work not actually performed in

connection with real estate settlement services. Additionally, Fong alleged a claim under the Truth

in Lending Act ("TILA"), at 15 U.S.C. § 1641(g), for defendants' alleged failures to provide notice

of changes in the creditor status of her mortgage loan. Finally, Fong alleged four causes of action

arising under state law against all defendants for (1) wrongful foreclosure; (2) common law fraud;

(3) quiet title; and (4) declaratory relief.

Fong's complaint names ten specific defendants as well as two classes of anonymous

defendants. The named defendants include: (1) Wells Fargo Bank, N.A.; (2) Aurora Loan Services,

LP; (3) Lehman Brothers Holdings, Inc.; (4) Structured Asset Securities Corporation; (5) Structured

---

[1] The record is cited in the following format: ["Docket Entry Number" at "page or paragraph number within docket entry"].

Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2004-3; (6) La Salle Bank, N.A.; (7) US Bank, N.A.; (8) Mortgage Electronic Registration Systems, Inc. ("MERS"); (9) Aurora Loan Services, Inc.; and (10) Bank of America, N.A. The unidentified defendants are: (1) "All persons claiming by, through or under such person, all persons unknown, claiming any legal or equitable title, estate, lien or interest in the property described in the complaint adverse to plaintiff's title thereto"; and (2) "Does 1 to 20, inclusive." Wells Fargo Bank N.A. and MERS have filed answers to the complaint [DE 20, 25]. Structured Asset Securities Corporation was dismissed from this action for failure to serve process [DE 50] and Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2004-3 was dismissed for want of prosecution [55]. In addition, this action was subsequently stayed only as to Lehman Brothers Holdings, Inc. due to its bankruptcy filing [DE 44].

Now before the Court are two motions to dismiss, both filed on December 17, 2012, the first by defendants Aurora Loan Services, Inc. ("Aurora, Inc."), and Aurora Loan Services, L.P., ("Aurora, LP") [DE 39] and the second by defendant Lehman Brothers Holdings, Inc., ("Lehman Brothers"). [DE 40]. The Aurora defendants and Lehman Brothers first request that Fong's two federal causes of actions, under RESPA and TILA, be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for a failure to state a claim. Second, they request that this Court decline to exercise supplemental jurisdiction over Fong's remaining causes of action, each of which arises under state law, or in the alternative, that it dismiss those claims for lack of standing or for failure to state a claim. Fong responded on January 2, 2013, [DE 41], and Aurora, LP and Aurora, Inc., filed a reply brief on January 9, 2013. [DE 42]. For the reasons explained below, the Court now **GRANTS** the Aurora defendants' motion, and **GRANTS in part** and **DENIES in part** Lehman

Brothers' motion. Also before the Court is Fong's application for entry of default judgment against US Bank, N.A. [DE 51], which the Court **DENIES**.

## BACKGROUND

Fallon Fong alleges that she owned a property located in Lake County, Indiana, which was secured by a mortgage. [DE 1 ¶ 16]. According to the complaint, Aurora, LP, and Wells Fargo Bank, N.A., were the originators of the mortgage loan. [DE 1 ¶ 8]. Fong alleges that Wells Fargo Bank, N.A. and Aurora, LP paid unspecified defendants a "Yield Spread Premium" at the origination of the mortgage, and that these amounts were not in return for any goods or services or "were not actually related to the value of the goods/services." [DE 1 ¶¶ 99, 101]. Fong further alleges that Aurora, LP, and Wells Fargo Bank, N.A., separated the Promissory Note from the mortgage and sold the Note to Lehman Brothers. [DE 1 ¶ 21]. Lehman Brothers, in turn, sold the Note to Structured Asset Security Corporation, which then sold the Note to Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2004-3, an investment trust. [DE 1 ¶ 21]. LaSalle Bank, N.A., was the trustee for the trust. [DE 1 ¶ 21]. None of these transferees provided Fong with notice of the transfer, however, according to the complaint. [DE 1 ¶ 111]. Fong alleges that MERS was the original "beneficiary" for the secured mortgage interest which was separated from the Note almost instantaneously at the point of sale. [DE 1 ¶¶ 28(f)].

At some point, Fong defaulted on her payment obligations. [DE 1 ¶ 57]. To avoid foreclosure, Fong now contests the ownership of the property and the ownership and validity of the underlying mortgage and security interest. Fong alleges that splitting the Note from the mortgage rendered the mortgage invalid, and that due to the payment of a default insurance policy, the underlying Note was paid in full, thus obviating any outstanding indebtedness. [DE 1 ¶ 26]. She

now argues that this payment, along with errors in the handling and transfer of the Note and mortgage, resulted in a situation where none of the defendants have the legal right to foreclose on her property. [DE 1 ¶ 28]. Fong seeks a declaratory judgment clarifying the ownership of the property and mortgage; injunctive and equitable relief; and compensatory, special, general and punitive damages. [DE 1 ¶ 1].

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint when it fails to set forth a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must decide whether the complaint satisfies the "notice-pleading" standard. *Indep. Trust Corp. v. Stewart Info. Serv's Corp.*, 665 F.3d 930, 934 (7th Cir. 2012). The notice-pleading standard requires that a complaint provide a "short and plain statement of the claim showing that the pleader is entitled to relief," sufficient to provide "fair notice" of the claim and its basis. *Id*. (citing Fed. R. Civ. P. 8(a)(2)); *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011) (internal citations omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "Pursuant to Rule 8, pleading is meant to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Bausch v. Stryker Corp.*, 630 F.3d 546, 559 (7th Cir. 2010) (internal citations omitted). The plaintiff receives "the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Id*. This is to "ensure that claims are determined on their merits rather than on pleading technicalities." *Christensen v. County of Boone*, 483 F.3d 545, 548 (7th Cir. 2007). In determining the sufficiency of a claim, the Court construes the complaint in the light most favorable to the nonmoving party, accepts all well-pleaded facts as true, and draws all inferences in the nonmoving

4

party's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010) (internal citations omitted).

The Supreme Court has adopted a two-pronged approach to the consideration of a Rule 12(b)(6) motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). First, pleadings consisting of no more than mere conclusions are not entitled to the assumption of truth. *Id*. This includes legal conclusions couched as factual allegations, as well as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555). Second, if well-pleaded factual allegations are present in the complaint, courts should "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009). The complaint "must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011) (internal citations omitted). A plaintiff's claim, however, need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Serv's Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (quoting *Twombly*, 550 U.S. at 556). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id*. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted). Factual allegations, however, "that are 'merely consistent with' a defendant's liability . . . 'stop short of the line between

5

possibility and plausibility of entitlement to relief.'" *Id*. at 678 (internal citations omitted).

Finally, the plaintiff's *pro se* status affects the Court's consideration of the motion. When evaluating a *pro se* complaint, "district courts have a special responsibility to construe [the complaint] liberally and to allow ample opportunity for amending the complaint if it appears that by doing so the *pro se* litigant would be able to state a meritorious claim." *Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996). Furthermore, "it is incumbent on [the district court] to take appropriate measures to permit the adjudication of *pro se* claims on the merits, rather than to order their dismissal on technical ground." *Id*. The trial court's duty "ensure[s] that the claims of a *pro se* litigant are given a fair and meaningful consideration." *Palmer v. City of Decatur*, 814 F.2d 426, 428-29 (7th Cir. 1987). Nonetheless, "[d]istrict judges are not mind readers, and should not be required to explain to parties whether or how their complaints could be drafted to survive a motion to dismiss." *James Cape & Sons Co. v. PCC Const. Co.*, 453 F.3d 396, 401 (7th Cir. 2006).

### DISCUSSION

The moving defendants ask: (1) that Fong's two federal causes of actions, under RESPA and the TILA, be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for a failure to state a claim; (2) that this Court decline to exercise supplemental jurisdiction over Fong's remaining causes of action, each of which arises under state law; and (3) that, in the event the Court does choose to exercise supplemental jurisdiction over the state law claims, it dismiss those claims regardless for lack of standing or for failure to state a claim. The Court addresses each issue in turn.

I.    **Federal Claims**

    A.    **Count V: Violation of the Real Estate Settlement Procedures Act ("RESPA")**

    Fong's first federal claim, contained in Count V of the complaint, alleges a violation of

RESPA. In essence, RESPA is an "anti-kickback statute" designed to prohibit "kickback and referral fee arrangements." *Durr v. Intercounty Title Co. of Illinois*, 14 F.3d 1183, 1186 (7th Cir. 1994). Under 12 U.S.C. § 2607(a), "[n]o person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." Additionally, under 12 U.S.C. § 2607(b), "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." By way of illustration:

> [T]he statutory language describes a situation in which A charges B (the borrower) a fee of some sort, collects it, and then either splits it with C or gives C a portion or percentage . . . of it. A might be a lawyer, and C a closing agent . . . and A might charge a legal fee to B and kickback a share of it to C for recommending to the borrower that he use A's services. That would be a form of commercial bribery and is the target of section 8(b).

*Weizeorick v. Abnamro Mortg. Group, Inc.*, 337 F.3d 827, 830 (7th Cir. 2003).

Distilling the foregoing, courts have typically said that a violation of RESPA involves three elements: "(1) a payment or thing of value; (2) given and received pursuant to an agreement to refer settlement business; and (3) an actual referral." *Galiano v. Fidelity Nat'l Title Ins. Co.*, 684 F.3d 309, 314 (2d Cir. 2012); *see also Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 427 (6th Cir. 2009); *Culpepper v. Irwin Mortg. Corp.*, 491 F.3d 1260, 1265 (11th Cir. 2007) (citing *Culpepper v. Inland Mortg. Corp.*, 132 F.3d 692, 695–96 (11th Cir. 1998)); Paul Barron, Dan Rosin & Michael A. Berenson, 1 Federal Regulation of Real Estate and Mortgage Lending § 2:45 (4th ed. 2011); Joyce Palomar, 2 Title Insurance Law § 21.2 (2011). To successfully make out a RESPA kickback claim, Fong must not only nominally cite each of those elements, but must provide enough well-

pleaded, case-specific facts for the Court to conclude that her claim is facially plausible.

Fong's factual allegations in support of the RESPA claim are as follows:

The loans to Plaintiff by Defendants Wells Fargo Bank, N.A.[,] and Aurora[,] LP, are federally regulated mortgage loans defined in the Real Estate Settlement Procedures Act ("RESPA") and implemented by regulation [sic] acts which are broad in terms of the requirements.

* * *

Defendant Wells Fargo Bank N.A. and Aurora LP paid to Defendants (14) a YSP on Plaintiff's loans and no Defendant offered Plaintiff lower up front fees for this YSP payment. To the contrary, Defendants placed Plaintiff into a more expensive loan then [sic] Plaintiff was in prior to meeting the Defendants or should have been placed into based upon the Plaintiff's credit score and income.

* * *

In the case at bar, the Defendants, and each of them, engaged in goods/services that were not actually performed and where the payments were not actually related to the value of the goods/services.

Defendant Wells Fargo Bank N.A. and Aurora LP should have known that the Defendants (14) did not earn the YSP or other payments because, *inter alia*, "common industry practice is that lenders follow underwriting standards that demand a review of originations and therefore lenders typically know that brokers have performed the services required." HUD's 2001-1 Policy Statement at 53055. If Defendant Wells Fargo Bank N.A. and Aurora LP had reviewed Plaintiff's loan originations, including their loan applications, Wells Fargo Bank N.A. and Aurora LP would have learned of the obvious red flags said applications contained.

In summary, Fong appears to allege that the payment of a "yield spread premium" (referred to by Fong as "YSP") by Wells Fargo Bank, N.A., and Aurora, LP, to unnamed defendants constituted a kickback in violation of RESPA. [DE 1 ¶ 99]. A yield spread premium is a "payment from a lender to a mortgage broker based on the difference between the interest rate accepted by the borrower and the 'par rate' offered by the lender." *Howland v. First Am. Title Ins. Co.*, 672 F.3d 525, 530 (7th Cir. 2003). While these payments have "been criticized as blatant referral fees that compensate mortgage

8

brokers not for their services but for pushing a higher interest rate on the borrower", they also can have legitimate purposes, such as "enabl[ing] borrowers to finance up-front costs they might otherwise pay to mortgage brokers." *Id*. The Department of Housing and Urban Development has stated that yield spread premiums are "not *per se* illegal, but might be illegal in individual cases or classes of transactions." *Id*.; *see also* HUD, Statement of Policy 1999-1, 64 Fed. Reg. 10080, 10084 (Mar. 1, 1999). Based on its reading of RESPA, HUD has promulgated a two-part test to determine whether a fee from a lender to a mortgage broker violates RESPA's anti-kickback provisions: (1) "whether goods or facilities were actually furnished or services were actually performed for the compensation paid", and (2) "whether the payments are reasonably related to the value" of the goods, facilities, or services. Statement of Policy 1999-1, 64 Fed. Reg. at 10084.

At the outset, the Court notes that Aurora, LP, Aurora, Inc., and Lehman Brothers have all moved to dismiss the RESPA claim against them. But Fong has not even attempted to plead a RESPA claim against Aurora, Inc., or Lehman Brothers. Nor could she. Neither is an originator nor an entity with which an originator could possibly have engaged in a YSP-kickback scheme. In reality, the transactions of which Fong complains appear to have been between Wells Fargo Bank, N.A., Aurora, LP, (as a loan originator) and unnamed broker-defendants. Given that, the Court would at no point in this litigation have construed Count V as stating a RESPA claim against Aurora, Inc., or Lehman Brothers, and to the extent that those parties seek clarification, any claim in Count V against them will be dismissed. The more relevant question is whether Count V states a claim against Aurora, LP.

Even under a liberal construction, *Donald*, 95 F.3d at 555, Fong's factual allegations with respect to the YSP-based RESPA claim against Aurora, LP, are "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678

(citing *Twombly*, 550 U.S. at 555). Fong asserts that unnamed defendants "engaged in

goods/services that were not actually performed and where the payments were not actually related

to the value of the goods/services[,]" but does not allege what the alleged goods or services were,

who claimed to be performing them, and what the actual value (or the allegedly non-related payment

value) of those goods or services was. Given that Fong's is a YSP claim, the unnamed defendants

should be the ones receiving a fee tethered to the amount by which the interest rate obtained exceeds

the par rate which was acceptable to Aurora, LP. But as the claim is currently pleaded, the Court

cannot deduce any specific facts about how that relationship operated in this case. Conclusory

statements, merely tracking the elements of an offense without tying it to the specific case before

the court, are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678-79. Moreover, even if

they were, in order to satisfy the federal pleading standard pronounced by *Iqbal* and *Twombly*, a

plaintiff's complaint must supply "enough facts to raise a reasonable expectation that discovery will

yield evidence supporting the plaintiff's allegations." *Twombly*, 550 U.S. at 556. Fong's failure to

even *make*, let alone support, any truly case-specific allegations about which transactions were in

violation of RESPA, in what amount, and in what way makes it virtually impossible to say what the

likelihood is of discovery turning up supporting evidence. Fong has failed to state a RESPA claim

against any of the moving defendants on which relief can be granted.

B.      **Count VI: Violation of the Truth in Lending Act ("TILA")**

Fong's second federal claim, contained in Count VI of the complaint, alleges that "the

Defendants and each of them" violated the Truth in Lending Act. TILA requires "new creditors" of

mortgage loans to notify the borrower in writing "not later than 30 days after the date on which a

mortgage loan is sold or otherwise transferred or assigned to a third party" of such transfer or assignment. 15 U.S.C. § 1641(g). Both the Aurora defendants and Lehman Brothers have moved to dismiss this count. Clearly, Aurora, LP, cannot be the subject of a suit under the TILA section at issue; Fong alleges that Aurora, LP, was the *originator* of the loan, not a "new creditor," so Aurora, LP, could never have been obligated to give such a notice to Fong under TILA. Nor can Aurora, Inc., be considered a proper defendant; by Fong's own allegations, Aurora, Inc., was never a creditor. [DE 1 ¶ 72]. This is a textbook failure to state a TILA claim. *See, e.g., Martinez-Bey v. Bank of America, N.A.*, 2013 WL 3054000 at *6 (N.D.Tex. June 18, 2013) (because plaintiff essentially argued that defendant was not the "new creditor" or "assignee" of his mortgage, his allegations failed to state a claim under § 1641(g)); *Jameel v. Flagstar Bank, FSB*, No. CIV.A. H–12–1510, 2012 WL 5384177, at *7 (S.D.Tex. Nov.2, 2012) (explaining that to state a claim under § 1641(g), the plaintiff must "allege[ ] facts showing that [the defendant] [was] the new owner or assignee and that it failed to meet the notification requirement [of] § 1641(g)").

Lehman Brothers, on the other hand, did allegedly purchase or take over a loan from Wells Fargo Bank, N.A., and Aurora, LP, [DE 1 ¶ 21], and the complaint contains allegations sufficient to make out a claim for violation of TILA. Fong expressly alleges that the Note was sold to Lehman Brothers, that she was not given any notice as required, and that she sustained damage as a result [DE 1 ¶ 21, 74, 111, 112]. In arguing for dismissal of this claim, Lehman Brothers relies on the fact that section 1641(g) did not become effective until May 20, 2009, and that the statute of limitations is only one year, and argues that Fong's complaint is deficient because it fails to allege that her claim fell within these periods. 15 U.S.C. § 1640(e). However, "a complaint need not anticipate or overcome affirmative defenses such as the statute of limitations." *Hollander v. Brown*, 457 F.3d 688,

691 n.1 (7th Cir. 2006) (stating that "[i]t is, of course, 'irregular' to dismiss a claim as untimely

under Rule 12(b)(6)") (quoting *United States v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004)).

Dismissals under Rule 12(b)(6) are typically only appropriate on these grounds where the plaintiff

"effectively pleads herself out of court by alleging facts that are sufficient to establish the defense,"

not when a complaint omits facts that would defeat its claim. *Id.* The same principle applies to the

timing of the claim relative to the effective date of the statute. *See Foley v. Wells Fargo Bank, N.A.*,

849 F. Supp. 2d 1345, 1349-50 (S.D. Fla. 2012) (stating on a motion to dismiss that "the Court

declines Defendant's invitation to speculate that any [transfer of the Note] must have occurred prior

to the May 2009 enactment of 15 U.S.C. § 1641(g)"). Though Lehman Brothers may ultimately

defeat the claim on this ground, Fong has not pled herself out of court by omitting the date of the

transaction, so the motion to dismiss must be denied as to Count VI against Lehman Brothers.

## II.     State Law Claims

In addition to her federal claims, Fong's complaint alleges four causes of action arising under

state law against all defendants for (1) wrongful foreclosure; (2) common law fraud; (3) quiet title;

and (4) declaratory relief. Both the Aurora defendants and Lehman Brothers have moved to dismiss

all state claims. Though the motions are only brought under Rule 12(b)(6), they also assert that the

Court lacks subject matter jurisdiction over these claims because they do not fall within the Court's

supplemental jurisdiction. At the outset, the Court notes that Fong responded to the defendants'

arguments by attempting to invoke the Court's diversity jurisdiction. [DE 41 at 7]. However, there

are no factual allegations in the Complaint on which diversity jurisdiction might be based. In order

to properly plead diversity jurisdiction, a complaint must allege each party's citizenship and the

amount in controversy. 28 U.S.C. § 1332. Although Fong can seek leave to amend her complaint

to incorporate such allegations, they have not been alleged in the present complaint and the Court

cannot rely on them to establish its jurisdiction.

As to this Court's supplemental jurisdiction, under 28 U.S.C. § 1367(a), a federal district

court can exercise supplemental jurisdiction over non-federal claims "that are so related to claims

in the action within such original jurisdiction that they form part of the same case or controversy

under Article III of the United States Constitution." Claims form part of the same case or

controversy if they "derive from a common nucleus of operative fact," such that a plaintiff "would

ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers of Am. v.*

*Gibbs*, 383 U.S. 715, 725 (1966). "A loose factual connection between the claims is generally

sufficient." *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 614 (7th Cir. 2007). However, even where

this standard is met, a district court may decline to exercise supplemental jurisdiction over a state

law claim if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). When deciding whether to exercise supplemental jurisdiction, "a federal court

should consider and weigh in each case, and at every stage of the litigation, the values of judicial

economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S.

156, 158, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997).

It is arguable whether the state law claims form part of the same case or controversy such

that this Court has the power to decide them. The federal claims pertain to the loan origination and whether proper notice was given by any new creditors, whereas the state claims pertain to current ownership of the mortgage and interest in the property. There may, however, be a loose factual connection in that each claim in some way involves the process and path by which the mortgage and Note were allegedly issued, separated, and transferred from defendant to defendant. The Court need not definitively decide this question, though, because even if it could exercise supplemental jurisdiction, it would decline to do so because the state claims substantially predominate over the claims over which this Court has original jurisdiction. 28 U.S.C. § 1367(c)(2).

Each of the state law claims relates to Fong's current interest in the property and actions that the defendants have taken or will take to foreclose on the property, issues that are fundamentally state law matters. Fong's response to the motion to dismiss reinforces the fact that the state claims predominate over the federal claims since she does not even mention the RESPA or TILA claims in her brief. [DE 41]. Rather, she only argues in support of the claims for quiet title and declaratory judgment as to her ownership of the property, and she asserts that none of the defendants has ownership of or interest in the property and that they do not have the right to foreclose on it. These are questions that can properly be addressed by state courts in any foreclosure proceedings, so interests of comity and judicial economy weigh strongly in favor of declining supplemental jurisdiction. Accordingly, this Court will not exercise supplemental jurisdiction over the state law claims, and Counts I through IV are hereby DISMISSED WITHOUT PREJUDICE as to all defendants.[2]

---

[2] The court also notes that this decision will not prejudice the plaintiff with respect to any state statutes of limitation for her claims. Pursuant to 28 U.S.C. § 1367(d), the "period of limitations" with respect to any claim brought under a federal court's supplemental jurisdiction "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." State courts are obligated to

## III.     Application for Default Judgment

Fong has also moved for entry of default judgment against US Bank N.A. [DE 51] However, while US Bank N.A. is named as a defendant in the caption of the complaint and has been served [DE 16], the complaint does not include a single allegation relating to US Bank N.A. or even mention it outside of the caption. Therefore, Fong's application for entry of default judgment must be denied. *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) ("Once default is entered, 'it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'") (citing 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2688, at 63 (3d ed. 1998)); *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("There must be a sufficient basis in the pleadings for the judgment entered."). For that same reason, US Bank N.A. is DISMISSED WITHOUT PREJUDICE; since there are no allegations against it whatsoever, the complaint fails to state a claim against US Bank N.A. for which relief can be granted.

## IV.     Remaining Claims and Defendants

Though the Court has addressed all of the matters presently before it, it notes that its reasoning as to many of these matters applies with equal force to each of the remaining claims and defendants. Count V, asserting a violation of RESPA, has been dismissed as to the moving defendants on the basis that the complaint sets forth no case-specific allegations whatsoever from which to conclude that any violation of the statute has taken place. Rather than permit this same

---

follow the statute, and in any case, Indiana has a corresponding savings statute that is even more generous. *See, e.g., McGill v. Ling*, 801 N.E.2d 678 (Ind. App. 2004) (explaining how the Indiana "Journey's Account Statute," I.C. § 34-11-8-1, renders claims like these timely when re-filed in state court); *see also* AMJUR LIMITATION § 276 (for more general information).

claim, for which this Court has already concluded no relief could be granted based on the allegations in the complaint, to remain pending against the remaining defendants, the Court exercises its inherent authority and DISMISSES Count V *sua sponte* against all defendants, WITHOUT PREJUDICE to Fong seeking leave to amend her complaint so as to properly plead this claim. *See Acequia, Inc. v. Prudential Ins. Co. of Am.*, 226F.3d 798, 807 (7th Cir. 2000) ("[W]here one defendant succeeds in winning summary judgment on a ground common to several defendants, the district court may also grant judgment to the non-moving defendants, if the plaintiff had an adequate opportunity to argue in opposition."); *Gordon v. Bank of N.Y. Mellon Corp.*, No. 4:12-cv-18, 2013 WL 4048575, at *12 n.9 (N.D. Ind. Aug. 7, 2013) (dismissing claims against additional defendants based on the argument raised by one defendant that the complaint failed to allege facts sufficient to state a claim); *Hochstetler v. Fed. Home Loan Mortg. Corp.*, No. 3:12-cv-772, 2013 WL 3756502, at *5 (N.D. Ind. July 16, 2013) (dismissing claims under TILA *sua sponte* for failing to plead any specific facts that support the claim).

Second, as to Fong's TILA claim under Count VI, the Court notes that the only parties the complaint alleges that the Note was sold to, such that they could possibly have violated TILA's notice requirement under section 1641(g), are Lehman Brothers, Structured Asset Securities Corp., and Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2004-3 (the latter two of whom have already been dismissed). Except as to Lehman, and for the same reasons stated above as to the Aurora defendants, Fong has failed to state a claim for which relief can be granted against any of the remaining defendants. *See, e.g., Martinez-Bey v. Bank of America, N.A.*, 2013 WL 3054000 at *6 (N.D.Tex. June 18, 2013) (because plaintiff essentially argued that defendant was not the "new creditor" or "assignee" of his mortgage, his allegations failed to state

a claim under § 1641(g)); *Jameel v. Flagstar Bank, FSB*, No. CIV.A. H–12–1510, 2012 WL 5384177, at *7 (S.D. Tex. Nov. 2, 2012) (explaining that to state a claim under § 1641(g), the plaintiff must "allege[ ] facts showing that [the defendant] [was] the new owner or assignee and that it failed to meet the notification requirement [of] § 1641(g)").Therefore, the Court likewise DISMISSES Count VI *sua sponte* as to all remaining defendants, WITHOUT PREJUDICE.

Having declined to exercise jurisdiction over any of the state claims against any defendant (Counts I through IV), and having dismissed the federal claims (Counts V and VI) against all defendants with the exception of Count VI against Lehman Brothers, all that presently remains is that sole count against Lehman Brothers. Should Fong seek leave to amend her complaint, however, the Court notes that the complaint does not contain a single mention of Bank of America, N.A. outside of the caption, and the complaint therefore fails to state any claim against that defendant. The Court finally notes that the two sets of anonymous defendants would also be subject to dismissal: "[I]t is pointless to include lists of anonymous defendants in federal court; this type of placeholder does not open the door to relation back under Fed. R. Civ. P. 15, nor can it otherwise help the plaintiff." *Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997); *Valdez v. Ind. State Prison*, No. 2:11-cv-484, 2012 WL 3921445, at *2 (N.D. Ind. Sept. 7, 2012) ("If at some point in the future the Plaintiffs can identify and name a defendant against whom they can state a claim, then they can attempt to amend the complaint. For now, however, retaining John and Jane Does as defendants serves no purpose, and they are therefore be [sic] dismissed *without* prejudice.").

## V.    <u>Stay as to Lehman Brothers</u>

To address one final matter, there is currently a stay in this action as to Lehman Brothers [DE 44], which was entered following the Notice of Bankruptcy Filing filed by Lehman Brothers [DE

43]. According to the defendant's filing, Lehman Brothers filed a bankruptcy petition on September 15, 2008, prompting application of the automatic stay under 11 U.S.C. § 362(a). The automatic stay prohibits the commencement of actions to recover claims that arose before the commencement of the bankruptcy filing, but does not apply to proceedings regarding post-petition claims. *Id.*; *In re Garogalo's Finer Foods, Inc.*, 186 B.R. 414, 436 n.17 (N.D. Ill. 1995) ("It is well established that claims arising post-petition are not subject to the automatic stay."). Because Lehman Brothers' bankruptcy petition was filed on September 15, 2008, and because TILA did not become effective until May 20, 2009, Fong's TILA claim by definition cannot have arisen pre-petition. If the alleged transfer did take place prior to the effective date on May 20, 2009, then the claim would be subject to a dismissal rather than a stay. Therefore, the stay is LIFTED, solely as to Count VI against Lehman Brothers.

**CONCLUSION**

The motion to dismiss filed by the Aurora defendants [DE 39] is **GRANTED**, and Plaintiff's claims against Aurora Loan Services LP and Aurora Loan Services, Inc. are **DISMISSED WITHOUT PREJUDICE**. The motion to dismiss filed by Lehman Brothers [DE 40] is **GRANTED** as to Counts I through V, which are **DISMISSED WITHOUT PREJUDICE**, but is **DENIED** as to Count VI. Plaintiff's application for entry of default judgment against US Bank NA [DE 51] is also **DENIED**. Further, this Court *sua sponte* **DISMISSES WITHOUT PREJUDICE** all counts against Wells Fargo Bank NA, LaSalle Bank NA, Mortgage Electronic Registration Systems, Inc., Bank of America NA, US Bank NA, "Does 1 through 20, inclusive," and "All persons claiming by, through or under such person, all persons unknown, claiming any legal or equitable title, estate, lien or interest in the property described in the complaint adverse to plaintiff's title

thereto." Finally, the stay currently in place as to Lehman Brothers is **LIFTED** as to Count VI only.

SO ORDERED.

ENTERED:    September 3, 2013

<u>        /s/ JON E. DEGUILIO        </u>
Judge
United States District Court